UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Alex Turner<br>220 East North Street<br>Fostoria, Ohio 44830 | \* | Case No. 3:20-cv-2575 |
| | \* | Judge |
| Plaintiff, | \* | Magistrate Judge |
| v. | \* | |
| Faurecia Exhaust Systems, LLC<br>c/o Capital Corporate Services, Inc.<br>4568 Mayfield Rd., Suite 204<br>Cleveland, Ohio 44121, | \* | **COMPLAINT** |
| | \* | **JURY DEMAND ENDORSED HEREON** |
| | \* | |
| Defendant. | \* | |
| | \* | |

Now comes Plaintiff Alex Turner ("Plaintiff" or "Mr. Turner"), through undersigned counsel, for his Complaint against Faurecia Exhaust Systems, LLC ("Faurecia" or "Defendant"), and hereby states as follows:

## I.   INTRODUCTION

1.   This is an action to remedy willful violations of the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601, *et seq.*, ("FMLA") and for violations of Ohio law, Ohio Revised Code Chapter 4112 ("Chapter 4112"). Due to Defendant's willful interference with Plaintiff's FMLA rights and its willful retaliatory conduct for Plaintiff's protected activity, as well as discrimination and retaliation under Chapter 4112, Plaintiff has suffered a loss of wages, compensation, and benefits as well as other non-pecuniary losses as indicated herein to which Defendant is liable.

## II.   JURISDICTION AND VENUE

1.   The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 for violations of the FMLA. This court has supplemental jurisdiction over Plaintiff's state law claims pursuant

to 28 U.S.C. §1367 as Mr. Turner's state law claims are so closely related to these federal law claims that they form the same case and controversy under Article III of the United States Constitution.

2. Venue is proper in this forum pursuant to 28 U.S.C. §1391, as a substantial part of the events or omissions giving rise to the claim occurred in the Northern District of Ohio, Western Division.

### III. PARTIES

3. At all times relevant, Plaintiff is a person and an "eligible employee" within the meaning of the FMLA because he was employed by Defendant other than in domestic service for at least twelve (12) months and for at least 1,250 hours of service during the twelve (12) months before he sought FMLA leave and was employed at a worksite where fifty (50) or more employees are employed within seventy-five (75) miles of that worksite. *See* also 29 C.F.R. § 825.110. Further stating, Plaintiff was an "employee" as that term is defined under Chapter 4112 during all times relevant.

4. Defendant is a foreign limited liability company formed under the laws of the State of Delaware, but conducts substantial business in this judicial district as a manufacturer of exhaust systems. Further, its primary manufacturing facility is located in this judicial district.

5. At all times relevant hereto, Defendant has been an "employer" of Plaintiff as that term is defined in the FMLA because it is engaged in commerce or in any industry or activity affecting commerce that employs or employed at least fifty (50) or more employees at or within a 75-mile radius of the Plaintiff's worksite for each working day during each of 20 or more calendar workweeks in the year of or the calendar year preceding the events giving rise to this cause of action. Further stating, Defendant was an "employer" as that term is defined in Chapter 4112.

IV.     **FACTS**

6.      Plaintiff began his employment with Faurecia in 2015, rising to the top of the ranks within the Maintenance department at the Toledo, Ohio location, after working for several years successfully within the department.

7.      At the time of his termination, Plaintiff worked for Defendant in the position titled as Maintenance Supervisor, where he received positive performance evaluations and bonuses for the duration of his employment.

8.      As a Maintenance Supervisor, Mr. Turner was responsible for the management of the maintenance department for the Toledo operations, including but not limited to monitoring machinery, scheduling maintenance and repair tasks, reviewing operational data, participating in problem solving team meetings, staffing and coaching the maintenance team, enforcing plant safety rules and quality regulations, maintaining inventories, among other similar duties. Mr. Turner successfully performed his duties as a Maintenance Supervisor for Faurecia for several years until his termination on or about September 6, 2018.

9.      In 2016, Mr. Turner was diagnosed with Multiple Sclerosis ("MS"), which is a disability as it is a physical and/or mental impairment that substantially limits one or more major life activities, including but limited to the ability to walk, speak, and maintain bodily functions (including but not limited to digestive, bowel, and bladder functions). As such, Plaintiff began to experience symptomatic episodes of weakness and pain in his legs, and other symptoms related to MS. At all times relevant hereto, Plaintiff also used a walking cane as needed.

10.     Mr. Turner's MS also constitutes a serious health condition under the FMLA as it is a physical or mental condition that involves continuing treatment by a health care provider. As

such, Mr. Turner's MS required him to be absent from work on occasion at the onset of symptomatic episodes related to his disability and to be treated by a neurologist.

11. Despite the foregoing, at all times relevant hereto, Plaintiff was qualified to perform the essential functions of his position, with or without an accommodation, including but not limited to medical leave and the use of a walking cane.

12. After his diagnosis, Mr. Turner began to experience symptomatic episodes related to his MS that were exacerbated by warm weather and hot working conditions. At this time, Mr. Turner informed Faurecia and his supervisors about these symptoms. However, due to the loss of a staff member in the Maintenance Department, Mr. Turner was forced to maintain the "tool crib" that houses expensive tools and equipment, which also became very hot due to its location on the maintenance floor, separate from the temperature-regulated offices where Plaintiff normally worked.

13. Plaintiff requested that his supervisor, Mark McLaughlin ("Mr. McLaughlin"), secure a staff person to maintain the tool crib, as the heat aggravated his MS. In response to Mr. Turner's concerns and complaints as to how the heat caused him leg pain because of his MS, Mr. McLaughlin stated to Plaintiff directly, that "[he] should be used to the heat."

14. When Mr. Turner asked what Mr. McLaughlin meant by that statement, Mr. McLaughlin responded "because your parents worked in the fields," which Plaintiff reasonably interpreted to be based on his status as a Mexican American, to which Plaintiff responded that his parents did not work "in the fields."

15. Thereafter, in July 2017, as a result of his MS diagnosis, Mr. Turner's symptomatic episodes caused him to require the use of intermittent medical leave in accordance with the FMLA, which his neurologist certified, and Faurecia approved.

16. Plaintiff informed his superiors at Faurecia about his medical issues, treatment, prognosis, and he began to utilize intermittent FMLA leave as needed.

17. Within a few weeks, though, Faurecia, by and through Mr. McLaughlin and Defendant's Human Resources Department, placed Plaintiff on a Performance Improvement Plan ("PIP") on or about July 27, 2018, which noted alleged deficiencies in Plaintiff's attendance.

18. According to Faurecia's business records, Mr. Turner's attendance issues were due to his approved intermittent medical leave in accordance with the FMLA, including but not limited to delayed start times.

19. At this meeting, Plaintiff was informed that the PIP was to "make him better" as an employee, while the PIP directed Mr. Turner that he would be disciplined further if he did not meet the goals of the PIP immediately.

20. Some of the PIP's requirements included the performance of job duties that were outside of the scope of his job description and failed to account for Mr. Turner's prior satisfactory performance. Indeed, this was Plaintiff's first discipline.

21. Thereafter, while Plaintiff attempted to adhere to the PIP, he continued to utilize FMLA leave, which made the goal of perfect attendance and set start times impossible. Nevertheless, Mr. Turner strove to adhere to the new start times imposed upon him as best as possible, adhere to the attendance requirements, and fulfill the new duties imposed upon him in addition to his normal job duties.

22. During the PIP, which was set to expire in 30 days, Plaintiff reasonably became fearful of further reprimand and retaliation by Faurecia for his use of FMLA leave, disability, or status as a Mexican American, particularly since he continued to need to utilize medical leave, and due to Mr. McLaughlin's comments.

23. On or about August 7, 2018, during the period of Plaintiff's PIP with Faurecia, Mr. Turner learned that his position as a Maintenance Supervisor for Faurecia's Toledo, Ohio location was advertised by Faurecia to be filled.

24. At this time, Mr. Turner was still employed by Faurecia in this position, the PIP remained in place, and Mr. Turner's concerns about the future of his employment with Defendant reasonably escalated.

25. In the following weeks, Plaintiff requested additional training to adhere to the obligations of the PIP, which was met with little support and only vague instructions from his supervisor. In fact, no training was provided to Plaintiff in order to fulfill the PIP's purported goals.

26. At the end of the applicable time period of the PIP, Plaintiff was terminated by Faurecia and was informed that he had failed to adhere to the PIP.

27. Defendant's proffered reason for Mr. Turner's termination is merely pretextual as, according to sworn deposition testimony procured through proceedings before the Ohio Civil Rights Commission, Faurecia deemed Mr. Turner as a "liability" because of his MS.

28. In fact, at the termination meeting, Plaintiff was informed by his direct supervisor, Mr. McLaughlin, that as a salaried, managerial employee, perfect attendance was expected and required of him. However, Mr. Turner only utilized intermittent FMLA leave as needed within the confines of his FMLA certification.

29. As such, Defendant continued to willfully hold his protected medical leave against him without any good faith basis.

30. Faurecia's willful discipline and termination of Plaintiff in this way came as a complete shock to Mr. Turner given his previously unblemished employment history with

Defendant, as well as the timing of his termination in light of his use of a cane, medical leave, and protected activity under the FMLA.

31. Defendant's proffered reason of "performance" for Plaintiff's termination is merely pretextual. At no time prior to the request for FMLA leave and/or a reasonable accommodation did Plaintiff ever have any documented or undocumented performance-related issues. Additionally, according to an ongoing investigation and administrative proceeding conducted by the Ohio Civil Rights Commission, witnesses have confirmed that there was a consensus that management (former and current) wanted to terminate Plaintiff because of his MS, and the issues about his "poor performance" described in the PIP were not credible.

32. Therefore, the only reason why Plaintiff was placed in a PIP and subsequently terminated was because of his use of FMLA leave and because of his disability.

33. Further, given that Mr. Turner's direct supervisor/decision-maker made disparaging comments about his race/color/national origin such as "[he] should be used to the heat" and that Mr. Turner's "[p]arents worked in the fields," both of which could reasonably be interpreted as referring to Mr. Turner's Mexican origin, Defendant also terminated Plaintiff because of his race/color/national origin.

V. **CAUSES OF ACTION**

**COUNT I**
**(FMLA Interference with Rights - 29 U.S.C. § 2615, *et seq.*)**

34. All the preceding paragraphs are realleged as if fully rewritten herein.

35. At all times relevant, Plaintiff was an "eligible employee" employed by Defendant other than in domestic service for at least twelve (12) months and for at least 1,250 hours of service during the twelve (12) months before Defendant interfered with Plaintiff's FMLA rights as described above.

36. At all times relevant, Defendant is an "employer" as defined by the FMLA under 29 U.S.C. § 261(4)(A)(ii)(I) because it is engaged in commerce or in any industry affecting commerce that employs or employed at least fifty (50) or more employees at or within a 75-mile radius of the Plaintiff's worksite for each working day during each of 20 or more calendar workweeks in the year of or the calendar year preceding the events giving rise to this cause of action.

37. Defendant interfered with Plaintiff's FMLA rights by taking the following non-exhaustive list of actions: (1) holding his use of medical leave for his disability and/or serious health condition as a negative factor in Plaintiff's employment; (2) discouraging or otherwise interfering with Plaintiff's medical leave by unwarranted scrutiny or discipline; (3) disciplining and terminating Plaintiff's employment without any prior discipline, within weeks after his protected activity; (4) interfering with or otherwise not tolerating Plaintiff's continued use of FMLA leave; and (5) otherwise treating Plaintiff less favorably than similarly situated employees who after reasonable opportunity for discovery do not suffer from a serious health condition/are not disabled, actual or perceived, and who do not have a record of a serious disability and/or FMLA leave.

38. By engaging in the foregoing conduct, Defendant has interfered with, restrained, and/or denied Plaintiff's exercise of or attempt to exercise his FMLA rights, in violation of 29 U.S.C. § 2615(a)(1).

39. Defendant lacks good faith to believe it had not violated the FMLA in its actions.

40. Defendant's conduct was willful in its violations of the FMLA. As a direct a proximate result of Defendant's willful actions, Plaintiff has been harmed and seeks declaratory judgment and injunctive relief against Faurecia under the FMLA for a declaration that its actions

violate the FMLA, among other appropriate relief, including but not limited to employment, reinstatement, and/or promotion, as well as Plaintiff's attorneys' fees, and costs.

### COUNT II
### (FMLA Retaliation - 29 U.S.C. § 2615, *et seq.*)

41. All of the preceding paragraphs are realleged as if fully rewritten herein.

42. Defendant retaliated against Plaintiff for exercising or attempting to exercise his FMLA rights by taking the following non-exhaustive list of actions: (1) holding his use of medical leave for his disability and/or serious health condition as a negative factor in Plaintiff's employment; (2) discouraging or otherwise interfering with Plaintiff's medical leave by unwarranted scrutiny or discipline; (3) disciplining and terminating Plaintiff's employment without any prior discipline, within weeks after his protected activity; (4) interfering with or otherwise not tolerating Plaintiff's continued use of FMLA leave; and (5) otherwise treating Plaintiff less favorably than similarly situated employees who after reasonable opportunity for discovery do not suffer from a serious health condition/are not disabled, actual or perceived, and who do not have a record of a serious disability and/or FMLA leave.

43. By engaging in the foregoing conduct, Defendant has retaliated against Plaintiff's attempt to or exercise of his FMLA rights, in violation of 29 U.S.C. § 2615(a) and (b).

44. The Defendant's foregoing actions were taken willfully and in bad faith and without reasonable grounds for believing that its acts or omissions were not a violation of 29 U.S.C. § 2615, causing Plaintiff to lose wages, salary, and employment benefits and entitling him to reinstatement and to equitable relief as this Court may deem appropriate, his attorneys' fees, and costs.

45. As a direct a proximate result of Defendant's willful actions, Plaintiff has been harmed and seeks declaratory judgment and injunctive relief against Faurecia under the FMLA for

a declaration that its actions violate the FMLA, among other appropriate relief, including but not limited to employment, reinstatement, and/or promotion, as well as Plaintiff's attorneys' fees, and costs.

## COUNT III
### (Disability Discrimination - Ohio Revised Code § 4112.02, *et seq.*)

46. All of the preceding paragraphs are realleged as if fully rewritten herein.

47. At all times relevant, Plaintiff was an employee and Defendant was an employer as those terms are defined in R.C. § 4112.01, *et seq.*

48. At all times relevant, Plaintiff suffered from a physical impairment that constitutes a disability because it substantially limited his ability to perform major life activities and/or functions during symptomatic episodes, including to standing or walking for long periods of time, among other symptoms.

49. At all times relevant herein, Plaintiff was able to perform the essential functions of his job despite his disability.

50. Defendant knew that Plaintiff was disabled and/or regarded him as disabled.

51. Defendant discriminated against Plaintiff because of his disabilities by taking the following non-exhaustive list of actions: terminating the reasonable accommodations in place; failing to reasonably accommodate Plaintiff, despite his reasonable requested accommodation; and holding Plaintiff's medical absences and disability against him as a "liability."

52. As such, Defendant has violated Chapter 4112, *et seq.*, by discriminating against Plaintiff based on his actual or perceived disability or his record of being disabled.

53. By Defendant's foregoing omissions and commissions, Defendant violated Ohio Revised Code § 4112.02(A).

54. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer economic and non-economic damages as outlined herein.

55. Defendant's conduct was willful, wanton, reckless, and/or malicious for which Defendant is liable for compensatory damages, reasonable attorneys' fees, costs, declaratory and injunctive relief, and all other relief available under Ohio law.

## COUNT IV
### (Retaliation - Ohio Revised Code § 4112.02(I))

56. All of the preceding paragraphs are realleged as if fully rewritten herein.

57. Plaintiff engaged in protected activity by requesting reasonable accommodations under Ohio law and for opposing discriminatory treatment by Defendant against him.

58. Defendant knew that Plaintiff engaged in protected activity.

59. Once Plaintiff engaged in the aforementioned protected activity, Defendant purposefully retaliated against Plaintiff by taking the following non-exhaustive list of actions: terminating the reasonable accommodations in place; failing to reasonably accommodate Plaintiff, despite his reasonable requested accommodation; terminating Plaintiff for engaging in protected activity; and terminating Plaintiff as a "liability" to Faurecia due to his disability and/or protected activity.

60. By Defendant's foregoing omissions and commissions, Defendant has violated Ohio Revised Code § 4112.02(I).

61. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer economic and non-economic damages as outlined herein.

62. Defendant's conduct was willful, wanton, reckless, and/or malicious for which Defendant is liable for compensatory damages, reasonable attorneys' fees, costs, declaratory and injunctive relief, and all other relief available under Ohio law.

## COUNT V
### (Discrimination based on Race/Color/National Origin - Ohio Revised Code Section 4112, et seq.)

63. Plaintiff incorporates by reference the foregoing paragraphs as if fully rewritten herein.

64. Plaintiff is a member of a protected class from discrimination on the basis of his national origin because he is Mexican American.

65. Defendant employed Plaintiff as that term is defined in Ohio Revised Code Chapter 4112.

66. As described by the foregoing, Defendant subjected Plaintiff to discrimination motivated by Plaintiff's national origin, without limitation, by not treating Plaintiff the same in the terms and conditions and privileges of employment as Plaintiff's similarly situated employees who were not Mexican American, in violation of Ohio law.

67. As described by the foregoing, Defendant has discriminated against Plaintiff, including but not limited to, forcing Plaintiff to work in unfavorably hot conditions despite his disability because he "should be used to the heat," a decision made based on his national origin, Mexican American, in violation of Ohio law.

68. As a direct and proximate result of Defendant's willful and ongoing violations of Ohio law, Plaintiff has suffered and will continue to suffer damages for which Defendant is liable, including but not limited to: actual and compensatory damages; back pay; front pay or future damages; lost benefits; interest; emotional distress damages and other non-economic damages, including but not limited to damage to his reputation; humiliation; reasonable attorney's and expert fees; costs; injunctive relief; and any additional legal or equitable relief that this Court deems just and proper.

69. Defendant's conduct was willful, wanton, reckless and/or malicious for which Defendant is liable for compensatory damages, punitive damages and reasonable attorney's fees and costs.

## VI. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that this Court enter judgment against Defendant, as follows:

(a) An Order for declaratory judgment that Defendant's actions as complained of herein violate the FMLA and Ohio law;

(b) An Order for injunctive relief prohibiting Defendant from its continued conduct;

(c) An Order requiring Defendant to reinstate Plaintiff to his position;

(d) Awarding Plaintiff his back pay and front pay, as well as other appropriate economic relief as authorized pursuant to Ohio law, including but not limited to punitive damages;

(e) Awarding Plaintiff back pay and front pay, as well as liquidated damages, under the FMLA;

(f) Awarding Plaintiff costs and reasonable attorneys' fees associated with this action as provided by the FMLA and Ohio law; and

(g) Directing such other and further relief as the Court may deem necessary, just or appropriate.

Respectfully submitted,

**BRYANT LEGAL, LLC**

*/s/ Matthew B. Bryant*
Matthew B. Bryant (0085991)
3450 W Central Ave., Suite 370
Toledo, Ohio 43606
Telephone: (419) 824-4439

Facsimile: (419) 932-6719
Email: Mbryant@bryantlegalllc.com

/s/ *Daniel I. Bryant*
Daniel I. Bryant (0090859)
1550 Old Henderson Rd., Suite 126
Columbus, Ohio 43220
Telephone: (614) 704-0546
Facsimile: (614) 573-9826
Email: dbryant@bryantlegalllc.com

*Attorneys for Plaintiff*

## JURY DEMAND

Plaintiff requests a trial by a jury of twelve (12) persons to hear all issues so triable.

/s/ *Matthew B. Bryant*
Matthew B. Bryant (0085991)

Page **14** of **14**